June 13, 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PHARMACY 101 LTD.                          CIVIL ACTION

VERSUS                                     NO: 05-1386

AMB PROPERTY, LP                           SECTION: "A" (3)


## ORDER AND REASONS

Before the Court are a **Motion for Summary Judgment (Rec. Doc. 37)** and a **Motion in Limine to Exclude Plaintiff's Expert George G. "Buddy" Long, III (Rec. Doc. 38)** filed by defendant AMB Property, L.P.  Plaintiff, Pharmacy 101, Ltd., opposes the motions.  The motions, set for hearing on May 31, 2006, are before the Court on the briefs without oral argument.  For the reasons that follow, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART and the motion in limine is DENIED AS MOOT.

1

I.    **BACKGROUND**

Pharmacy 101 ("Plaintiff" or "Pharmacy 101") is a retail pharmacy which draws a high volume of traffic and customers.  In August 2004, Plaintiff and AMB Property ("Defendant") entered into a lease for commercial space located in the Elmwood Distribution Center in Jefferson Parish, Louisiana.  The Elmwood Distribution Center is a retail shopping center.  The lease has a five year term with an option to renew and the base rent is $1,304.48 per month, with minor incremental increases beginning October 2007.

Pharmacy 101 recorded its first full week of sales from that location as of November 13, 2004.  Other shopping center tenants began to complain about the circumstances surrounding the high volume of business generated by Plaintiff.  In particular, Defendant claims that other tenants complained that Plaintiff's customers were taking up an inordinate number of parking spaces in the lot that is shared by all of the Elmwood Distribution Center tenants.  On April 11, 2005, Defendant issued parking regulations that assigned each tenant a finite number of parking spaces.  Plaintiff was allotted six spaces based on its square footage of retail space.

That same day, Plaintiff filed the instant suit via a Verified Complaint for Temporary, Preliminary and Permanent

Injunctive Relief against Defendant.  Plaintiff alleged that the
parking restrictions were contrary to the lease provisions and
that Plaintiff "has lost and will continue to lose an
indeterminable number of customers who will come to the shopping
center, find no permissible place to park and leave." (Comp. ¶
19).  Plaintiff sought a temporary restraining order forbidding
Defendant from enforcing the parking restrictions, and
preliminary and permanent injunctive relief in the same vein.
Via its Supplemental Complaint for Damages and Injunctive Relief
filed on August 10, 2005, Plaintiff clarified that the purpose of
the suit is to enforce the unambiguous provisions of its lease in
order to prevent constructive eviction by Defendant and to
recover damages caused by Defendant's interference with
Plaintiff's use of the leased premises.  (Supp. Comp. ¶ 1).
Plaintiff prayed for a declaratory judgment in its favor holding
that any restriction on the number or location of parking spaces
is a violation of the lease, and that it is entitled to full and
peaceable possession of the premises.  (Id. ¶ 35).  Plaintiff
also prayed for all damages resulting from Defendant's alleged
violation of the lease, including continuing loss of revenue.
(Id. ¶ 39).[1]

_____

[1] The original complaint sought only injunctive relief.  The
claim for damages was added as part of the Supplemental

On March 23, 2006, Plaintiff's accounting expert, George G. "Buddy" Long, III, issued a report quantifying the estimated lost profits attributable to the change in the parking policy at $28,253.  This figure is the expert's estimate of damages sustained from April 11, 2005, when the new parking policy took effect, through August 27, 2005, the week ending immediately prior to the arrival of Hurricane Katrina.  Plaintiff was closed from August 29, 2005, through October 17, 2005, due to the effects of Katrina.  Moreover, Katrina caused a loss of some of the tenants of the strip shopping center which relieved the parking pressure on the remaining tenants.  (Long rpt. at 2).  Thus, after Katrina Plaintiff did not sustain lost profits due to the parking restrictions, a scenario that neither party could have foreseen.

II.   **DISCUSSION**

1.   *Motion for Summary Judgment*

Defendant moves for summary judgment on Plaintiff's claim for declaratory relief.  Defendant argues that the parking regulations were reasonable and permitted by the lease. Defendant also moves for summary judgment on its counterclaim that Plaintiff was in default of the lease based upon its actions

Complaint.

4

and the actions of its customers.  Defendant asks the Court to void the lease and order Plaintiff to vacate the premises.

In opposition, Plaintiff argues that the reasonableness of Defendant's parking regulations is a disputed fact-based determination that cannot be properly determined on summary judgment.  Likewise, Plaintiff argues that whether Pharmacy 101's customers rendered its business a "nuisance" is also a disputed and inherently fact-based determination that cannot be resolved short of a full-trial on the merits.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party.  Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S.

5

317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

     The question of whether the lease allowed Defendant to implement the parking restrictions turns on the Court's interpretation of the terms of the lease.  A full trial on the merits would not assist the Court in interpreting the lease.  A determination as to the parties' respective rights under the lease is particularly suited to resolution on summary judgment.

     The parties agree that the parking lot falls under the definition of "common areas" found in the lease.  (Def. Exh. 1 at 2, ¶ 2.2).  The lease gives Plaintiff as a tenant "the non-exclusive right to use in common with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and privileges reserved by Landlord under [the Lease]."  (Id. ¶ 2.3).  Paragraph 2.4 is entitled Common Areas - Rules and Regulations and provides that "[l]andlord shall have the exclusive control and management of the Common Areas and

6

shall have the right, from time to time, to establish, modify, amend and enforce reasonable Rules and Regulations with respect thereto in accordance with Paragraph 16.19." (<u>Id.</u> ¶ 2.4). Paragraph 16.19 provides that "[t]enant agrees that it will abide by, and cause its employees, suppliers, shippers, customers, tenants, contractors and invitees to abide by all reasonable rules and regulations which Landlord may make from time to time for the management, safety, care, and cleanliness of the Common Areas, the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants or tenants of the Building and the Industrial Center and their invitees. Landlord shall not be responsible to Tenant for the non-compliance with said Rules and Regulations by other tenants of the Industrial Center." (<u>Id.</u> ¶ 16.19). Finally, Paragraph 2.5 regarding Common Area Changes provides that the "[l]andlord shall have the right, in Landlord's sole discretion, from time to time . . . [t]o make changes to the Common Areas, including, without limitation, changes in the locations, size, shape and number of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, landscaped areas, walkways and utility raceways . . . ." (<u>Id.</u> ¶ 2.5).

The Court finds that Defendant was acting within the

7

confines of the lease when it implemented the parking
restrictions.  It is undisputed that Plaintiff's high volume
retail business caused a parking crunch for the other tenants at
the Elmwood Distribution Center.  Customer parking is essential
to any retail venture--a business reality, that Pharmacy 101
fully recognizes.  Under Louisiana law Defendant had a duty to
*all* of its tenants to ensure that the premises they were leasing
were suitable for the purpose for which they were leased.  La.
Civ. Code Ann. art. 2696 (West 1996).  Again, because the Elmwood
Distribution Center is a retail center all of the tenants had an
expectation of sharing in the premium parking located in front of
the businesses--an expectation that the other tenants could not
share in once Plaintiff's customers began to use the parking lot
in such high volume.  To the point, Defendant did not implement
the parking restrictions on a whim or fancy but rather with good
cause for doing so under the circumstances *prior to Katrina*.

The plain unambiguous terms of the lease recited above
allowed Defendant to impose the parking restrictions so that all
of the tenants could enjoy non-exclusive use of the common areas,
in particular the premium parking area.  Clearly, the lease would
not have allowed Defendant to deprive Plaintiff of parking
altogether but nothing in the lease prohibited Defendant from
imposing parking restrictions based on objective criteria in

8

direct response to a real problem.  And nothing in the lease
guarantees Plaintiff full and unfettered use of the premium
parking area.

Moreover, Plaintiff's right to non-exclusive use of the
common areas does not trump the lease provisions that allow
Defendant to impose the parking restrictions.  Even with the
parking restrictions Plaintiff still gets non-exclusive use of
the parking lot.  Once Plaintiff's allotted premium parking
spaces are taken its customers are still able to take full
advantage of the overflow parking area.  There is no limit to how
many spaces Plaintiff's customers can use in the overflow area.
The overflow parking might not be as convenient for Plaintiff's
customers but it is no less convenient for the customers and
clients of the other businesses located in the Center.  Plaintiff
complains that its business suffered when its customers did not
have access to convenient parking but Plaintiff's solution is to
shift the parking burden on the other tenants.  After all,
without the restrictions the other tenants endured the very
parking complaints that Plaintiff is raising in this lawsuit.  In
sum, Defendant did not violate its lease with Pharmacy 101 by
restricting the number of storefront parking spaces.

Given that Defendant could properly impose the parking
restrictions the next question is whether they are reasonable.

The Court does not agree with Plaintiff's contention that the question of the reasonableness of Defendant's parking regulations is so fact-based so as to preclude determination on summary judgment.  This case is set to be tried to the Court without a jury and the Court does not require a full trial on the merits to determine that under the circumstances the restrictions are reasonable.

Defendant looked to the objective criteria of the amount of square footage leased by each tenant when allocating parking spaces.  Pharmacy 101 has never suggested that it was cheated out of it fair allotment of parking spaces under the objective criteria.  Likewise, Pharmacy 101 has never suggested that it pays an inordinate amount of rent compared to other tenants or that it in any way bargained for preferential treatment under its lease.  The importance of convenient customer parking is obviously essential to all of the tenants in the Center and they are all entitled to their fair share of it.  The parking restrictions were reasonable.

The Court is unmoved by Plaintiff's contention that the objective criteria used by Defendant to allocate the parking on a pro rata basis is contrary to parish guidelines.  This Court finds only that under the circumstances the lease allowed Defendant to implement the restrictions and that they were

reasonable.  Plaintiff can raise its complaints about compliance with local ordinances to the appropriate parish authority.

The Court's conclusion that Defendant acted within its authority under the lease to impose the parking restrictions is based upon the particular circumstance that Defendant was forced to respond to the concerns of the other tenants.[2]  Those concerns were raised because the various tenants were competing for parking at the bustling Center.  As the Court understands the situation today, Katrina might have changed the impetus for the restrictions.  Thus, Defendant should note that while the Court does find that Defendant was within its rights to implement the parking restrictions, and therefore bears no liability for any pre-Katrina diminution in Plaintiff's profits, the Court questions whether it would be reasonable for Defendant to attempt

_____

[2] Plaintiff correctly points out that under the terms of the lease Defendant has no liability to Plaintiff for lease violations committed by other tenants.  The Court assumes that this provision appears in all of the tenant leases such that Defendant would have no liability to the other tenants who complained about Pharmacy 101's violations.  Because Defendant allegedly had no liability to the other tenants Plaintiff questions its motives in implementing the restrictions. Plaintiff complains that Defendant's sole reason for taking action against Pharmacy 101 was its fear of losing tenants. (Memo. Oppo. at 5).  Such a fear is surely a legitimate one. Unless Pharmacy 101 intended to pay additional rent to compensate the landlord when other tenants vacated in frustration then it has no basis to complain about Defendant's desire to placate the other complaining tenants.

to enforce the restrictions at this time if the parking crunch dissipated post-Katrina--whether due to a decrease in tenants or to a decrease in the customer base.  Defendant obviously wants Pharmacy 101 to vacate the premises but it would be contrary to the parties' lease agreement to allow Defendant to constructively evict Pharmacy 101 by limiting its customers to six premium parking spaces at a time when the remaining parking spaces are sitting vacant and unused.  While Katrina did not moot this controversy, its effect on the parking situation at the Center might very well have mooted Defendant's need to enforce those restrictions at this time.  In other words, the Court finds that the parking restrictions, which certainly changed Plaintiff's expectations under the lease, are valid so long as they were enacted and enforced in response to a specific need, a need that was in fact created by Plaintiff's own business.

As for Defendant's request that the Court void the lease based on the "nuisance" created by Pharmacy 101 customers, the Court does find that the "nuisance" factor is a disputed fact-based determination that cannot be properly determined on summary judgment.  Only through live testimony can the Court judge the credibility of the witnesses who have submitted affidavits in support of Defendant's position.  Plaintiff should understand, however, that the Court is unpersuaded by Plaintiff's argument

12

that Defendant would be powerless to have the lease voided if Defendant proves the allegations regarding the behavior of the clientele frequenting Plaintiff's pharmacy particularly if Defendant also establishes that Plaintiff's employees and management have been uncooperative in enforcing the rules and regulations governing the Center.

In sum, the motion for summary judgment is therefore GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED insofar as Defendant is entitled to a declaratory judgment that it did not violate the lease when it enacted the parking restrictions.  The motion is DENIED insofar as Defendant seeks to have the lease vacated based on the allegation that Plaintiff breached the lease.  The case will proceed to trial on Defendant's counterclaim only.

## 2.   *Motion in Limine*

Defendant's <u>Daubert</u> motion to strike the testimony of George Long, Plaintiff's accounting expert, is MOOT.  Mr. Long's testimony is relevant only to the quantum that Plaintiff would have been entitled to recover had the Court determined that Defendant violated the lease by imposing the parking restrictions.  The Court has found that Defendant did not violate the lease and therefore owes Plaintiff no damages for lost profits.

13

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 37)** filed by defendant AMB Property, LP should be and is hereby **GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that the **Motion in Limine to Exclude Plaintiff's Expert George G. "Buddy" Long, III (Rec. Doc. 38)** filed by defendant AMB Property, L.P. should be and is hereby **DENIED AS MOOT**.

*  *  *  *  *  *  *  *

14